**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 1:22-CR-00048S-ACL |
| v. ) | |
| ) | |
| TONY RAY WAITES, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Comes Now, Defendant Tony Waites, through counsel, and submits this Sentencing Memorandum for the Court's consideration in support of a sentence of twenty-two years in the Bureau of Prisons followed by lifetime supervised release. This sentence reflects the nature and circumstances of Defendant's offense, his history and characteristics, the need for punishment and deterrence, and is sufficient but not greater than necessary to serve the purposes of sentencing set forth in 18 U.S.C. §3553(a).

### The Dilemma of Childhood Sexual Abuse

On the surface, Tony had several positive aspects of his childhood. He had a very close relationship with his mother who provided him with care and support. Although his father was not as involved during his childhood, all his basic needs were met. As Tony grew older, he maintained gainful employment in sales and software support. To an outsider looking in, Tony's family life and upbringing likely would not present any concerns. But what was happening behind closed doors likely had a significant influence on his future and how he ended up before this Court.

For decades, Tony was silently struggling with serious childhood trauma. Throughout his childhood, he was subjected to sexual abuse multiple times. Consistent with many victims of abuse,

1

he did not disclose until later in life instead of when it was happening. Research provides various reasons for late disclosure of abuse.[1] In cases like this, the details of an individual's sexual history and background come to the forefront through questioning by counselors, evaluators, and probation officers. Because uncovering what may have contributed to or caused the criminal behavior is important to understanding the individual and for future treatment.

Tony was first sexually abused between the ages of three and four by his uncle. At such a young age, Tony did not have the awareness to understand this as abuse.  Not long after that, when Tony was six years old, another uncle began sexually abusing him. This continued for four years and occurred when his uncle came to visit Tony's family. Around this same time, Tony was abused by his older cousins. For years, Tony was sexually abused over and over again by family members who he was supposed to be able to trust. This abuse occurred at times when there was a lack of supervision when his mother was out of the home working and his father was absent.

Tony's introduction to sexualized behavior came far too early and came from experiencing sexual abuse. These repeated incidents of sexual exploitation and victimization were his first sexual encounters. Unfortunately, they laid the framework for the reason that he is now before the Court.

These charges have forced Tony to go to the root of his problems: his lack of recognition of his childhood abuse and lack of therapy to address his unresolved issues. Studies show that approximately twenty-three percent of sex offenders experienced sexual abuse in childhood.[2]  This has led researchers to conclude that the prevalence of sexual abuse in childhood among sex offenders is higher than the average prevalence rate of such abuse among adult males in the general

---

[1] Some reasons include that they feel guilty because they believe that the abuse is their fault; they are ashamed to tell; they are confused because the offender is someone they know and trust; they have been convinced that the abuse is normal or okay; and they are too young to know that the abuse isn't appropriate—especially if it's done by someone they know and trust. See Early Open Often, *Why Kids Don't Tell* accessed at https://www.earlyopenoften.org/get-the-facts/why-kids-dont-tell/

[2] *See* R. K. Hanson and S. Slater, Sexual Victimization in the History of Child Sexual Abusers: A Review. Annals of Sex Research, 1: 485–499 (1988). (discussing what is known as the victim-to-perpetrator cycle).

population.³ This research underscores the potential connection between victims of childhood sexual abuse and the chance they may become offenders themselves. It is likely that Tony became stunted emotionally by this childhood abuse and lacked the ability to clearly reflect on his decision-making. It is also likely that Tony's actions were in part due to his severe depression. Childhood sexual abuse has been correlated with higher levels of depression, guilt, shame, anxiety, and dissociative patterns.⁴ Tony was diagnosed with depression over 20 years ago while he was serving in the Air Force and has attempted suicide multiple times in the past. This history is likely linked to his severe childhood trauma.

Past victimization is not a legal defense, but Courts have found it to be a mitigating factor and considered it as a reason for a downward variance.⁵ Tony has shown remorse and acceptance of responsibility by pleading guilty. But his past abuse does provide some context for why someone like Tony would commit this offense. It also shows the dilemma of childhood sexual abuse for past victims who are now before the court as offenders.

---

³ *See* R. J. Garland and M.J. Dougher, The abused/abuser hypothesis of child sexual abuse: a critical review of theory and research. In J.R. Feierman, ed., Pedophilia: Biosocial dimensions. 488-519 (1990); *See also* M. Glasser, I. Kolvin, D. Campbell, A. Glasser, I. Leitch, and S. Farrelly, Cycle of child sexual abuse: Links between being a victim and becoming a perpetrator. 179 British Journal of Psychiatry, 482–494 (2001); A. F. Jespersen, M.L. Lalumière, and M. C. Seto, Sexual abuse history among adult sex offenders and non-sex offenders: A meta-analysis. 33(3) Child Abuse & Neglect, 179-192 (2009); J. Craissati, G. McClurg, and K. Browne, Characteristics of perpetrators of child sexual abuse who have been sexually victimized as children. 14 Sexual Abuse: A Journal of Research and Treatment, 225–239 (2002).

⁴ *See* M. Hall & J. Hall, The long-term effects of childhood sexual abuse: Counseling implications. Retrieved from http://counselingoutfitters.com/vistas/vistas11/Article_19.pdf (last visited September 28, 2020).

⁵ *See United States v. Farley*, 36 F.4th 1245, 1249 (10ᵗʰ Cir. 2022); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (affirming variance from Guideline minimum sentence of 151 months to 84-month sentence based on extensive history of childhood abuse); *United States v. Monson*, 2023 U.S. Dist. LEXIS 226385 (D. Mn. 2023) (downward variance after court emphasized mitigating factors such as defendant's personal trauma and childhood experiences); *Keiser v. United States*, 2021 U.S. Dist. LEXIS 2597 (Pa. MD 2021) (after considering defendant's childhood abuse, court granted a downward variance)

**Other 3553(a) Factors for Consideration**

Tony's history and the abuse he suffered is not the only 3553(a) factor the Court may wish to consider.

A.      *Twenty-two years in prison is a lengthy sentence that will serve the purposes of 3553(a).*

Twenty-two years in the Federal Bureau of Prisons is a significant sentence. Over two decades of prison time is nowhere near a slap on the wrist. Tony has already been confined for almost 2 years in the county jail. His punishment has begun already, and a sentence greater than twenty-two years will add time that is unnecessary to accomplish a significant punishment. By the time Tony is released, he will be in his sixties. The requested sentence is sufficient but not greater than necessary to meet the sentencing goals under 3553(a).

B.      *Sex offender registration and supervision is punishment.*

Because of Tony's actions, he will be labeled a sex offender. This label will mark him until the day he dies. Sex offender registration is a severe consequence of his plea. The Sixth Circuit held that the state sex offender registration statute imposed punishment. *Doe v. Snyder*, 834 F.3d 696, 705 (6th Cir. 2016). "In sum, while SORA is not identical to any traditional punishments, it meets the general definition of punishment, has much in common with banishment and public shaming, employs geographical restrictions like those employed by punitive sun-down laws, and has a number of similarities to parole/probation." *Id*. at 703. This will be true for Tony.

The consequences of a plea of guilty to sexual exploitation of a minor also serve as a deterrent. Courts have held that the shame of publicly pleading guilty not only deters the offender but can simultaneously serve as a deterrent for others if they were capable of being deterred. *United States v. Shipley,* 560 F. Supp. 2d 739, 745 (S.D. Iowa 2008); *United States v. Jacob*, 631 F. Supp. 2d 1099, 1118 (N.D. Iowa 2009). With his plea and conviction for sexual exploitation of a minor,

Tony will continue to be punished and labeled for the rest of his life. As time goes on the punishments for being a registered sex offender seems to worsen.

C.   *Conditions of supervised release strike a good balance of protecting the public and assisting the individual with rehabilitation.*

The conditions of supervised release that are placed on individuals who have pled to crimes like these are extensive. There are more conditions placed on sex offenders than any other offenders. Conditions such as: polygraphs, limited or monitored computer access, no contact with minors, and weekly treatment (individual and group) are all suggested in the PSR. The conditions are difficult and are targeted to address specific concerns of sex offenders.

The Probation Office does an excellent job of supervising these individuals and reporting any concerns to the Court. Given the number of supervision strategies and safeguards, and the level of high-level monitoring, Tony's compliance is all but ensured. This mitigates the need for additional incarceration when reasonable community-based options are available.

D.   *Tony's age lessens the chance of him recidivating.*

When looking at recidivism, Tony's age is also a key factor. If he were to receive a 22-year sentence, Tony would be in his late sixties at the time of release, making it unlikely he would reoffend. Courts are required under 18 U.S.C. § 3553(a)(2)(C) to consider the need to protect the public from future crimes of this defendant. When considering that need, the age of a defendant is relevant to determining the appropriate length of imprisonment. *United States v. Nellum*, 2:04-CR-30-PS, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005). This is especially true when the Sentencing Commission and other researchers have determined that the likelihood of recidivism drops dramatically for those offenders over 50 years old, removing any compelling need to incapacitate or deter future criminal conduct on the part of the older offender.

5

In its 2016 study, the Sentencing Commission found that recidivism rates decline relatively consistently as age increases.[6] According to this study, recidivism rates decline steadily with age, from 35.5% for offenders age 21 and younger to 9.5% for offenders over age fifty.[7] In *United States v. Presley*, the Court of Appeals directed the district court to reconsider its sentence after it failed to contemplate the impact that a lengthy sentence would have on an older defendant. 790 F.3d 699, 703-04 (7th Cir. 2015). Sentencing judges need to consider the phenomenon of aging out of criminal activity. *Id.* at 701.

Courts have previously declined to impose guideline sentences on defendants who, like Tony, were over the age of forty on the grounds that such defendants exhibit markedly lower rates of recidivism in comparison to younger defendants.[8]

## Conclusion

According to the U.S. Sentencing Commissions Judiciary Sentence Information (JSIN) data, 64% of defendants who are similarity situated to Tony received downward departures or variances, with the average length of imprisonment being 291 months.[9] Here in the Eastern District of Missouri, 66.7 % of individuals sentenced under § 2G2.1 with an offense level in Zone D and Category I Criminal History were sentenced to less than 25 years, with the average sentence length being 234 months.[10]

---

[6] *See* U.S. Sentencing Commission, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW 12, ex. 9 (2016), accessed at https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview

[7] *Supra,* note 6.

[8] *See, e.g., United States v. Aguilera*, 06-CR-336, 2008 WL 4830802 (E.D. Wis. Oct. 28, 2008); *United States v. Carmona-Rodriquez*, No. 04 Cr. 667(RWS), 2005 WL 840464, at *5 (S.D.N.Y. Apr. 11, 2005); *Simon v. United States*, 2005 WL 711916, at *4 (E.D.N.Y. Mar. 17, 2005); *United States v. Nellum*, 2:04-CR-30, 2005 WL 300073, at *3 (N.D.Ind. Feb.3, 2005).

[9] Available at https://jsin.ussc.gov (§ 2G2.1 Total Offense level of 42, with Criminal History Category I).

[10] Available at https://ida.ussc.gov/analytics/saw.dll?Dashboard (2018-2022, § 2G2.2 Total Offense level of 30, with Criminal History Category I).

6

What this shows is a twenty-two-year sentence is a reasonable request and more than the average sentence of others similarly situated to Tony. Given the specific circumstances of Tony's case and the data detailed above, the requested sentence would be sufficient but not greater than necessary. Tony further requests the Court not impose a fine as he does not have ability to pay one.

Additionally, Tony respectfully requests that the Court consider his severe childhood abuse, his lack of criminal history, and rehabilitative potential when fashioning a sentence. He has accepted responsibility for the offenses he has committed. A prison sentence longer than twenty-two years is not necessary to punish, deter, incapacitate, and rehabilitate him.

WHEREFORE, for the foregoing reasons the Defendant respectfully requests the Court sentence him to twenty-two years' incarceration and lifetime supervised release with sex offense related conditions as noted in the Pre-Sentence Report.

> Respectfully submitted,
>
> FRANK, JUENGEL & RADEFELD,
> ATTORNEYS AT LAW, P.C.
>
> By */s/ Daniel A. Juengel*
>   DANIEL A. JUENGEL (#42784MO)
>   Attorneys for Defendant
>   7710 Carondelet Avenue, Suite 350
>   Clayton, Missouri 63105
>   (314) 725-7777

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

John N. Koester Jr.
Asst. United States Attorney
555 Independence, Room 3000
Cape Girardeau, Missouri, 63703

                                            */s/ Daniel A. Juengel*
                                            DANIEL A. JUENGEL